IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THE CONSTITUTIONAL GUIDED　　　　　:
WALKING TOURS, LLC; JONATHAN
H. BARI; and, LESLIE S. BARI
　　　　　Plaintiffs,　　　　　　　　:

　　　　　v.　　　　　　　　　　　　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　:　　NO. 09-3083
INDEPENDENCE VISITOR CENTER
CORPORATION; WILLIAM W. MOORE;
NATIONAL PARK SERVICE; DENNIS　　:
REIDENBACH; CYNTHIA MACLEOD;
and, DARLA SIDLES
　　　　　Defendants.　　　　　　　　:

**MEMORANDUM**


**Jones, J.**　　　　　　　　　　　　　　　　**March 31 , 2011**


　　**I.　　　Background**

　　The Constitutional Guided Walking Tours, LLC and its owners, Jonathan H. Bari and

Leslie S. Bari (hereinafter collectively referred to as "Plaintiffs"), were engaged in the operation

of a commercial walking tour of Independence National Historical Park (INHP) and the

surrounding area between the years of 2005 and 2010.[1]  Defendant National Park Service (NPS)

is the federal agency charged with the general oversight of INHP.  Defendants Reidenbach,

---

[1]　On January 3, 2011, this Court conducted its third settlement conference in this matter.
At that time, this Court was under the impression that the Constitutional Guided Walking Tours,
LLC was still in business and as such, the court expended considerable time and effort to
facilitate settlement negotiations.  However, on March 1, 2011, counsel for Plaintiffs informed
this Court that Plaintiffs " . . . stop[ped] doing business once and for all at the IVC [sic] as of
November 30, 2011."  (Doc. No. 40.)

1

MacLeod and Sidles are employees of the NPS.[2]  Defendant Independence Visitor Center

Corporation (IVCC) is a private entity contracted by the NPS to conduct the management

activities of INHP since 1999 and Defendant William Moore was the President and CEO of

IVCC from January, 1999 through January, 2009.

 Plaintiffs allege that Federal Defendants have acted arbitrarily and capriciously, thereby

subjecting them to restrictions and limitations not placed on their competitors.  Plaintiffs also

allege that the NPS unlawfully delegated management activities to the IVCC, that all Defendants

deliberately misled Plaintiff and third parties regarding the relationship between the NPS and the

IVCC, and that all Defendants refused to redress grievances raised by Plaintiffs.

Federal Defendants have filed a Motion to Dismiss Counts I, II  and VIII on the grounds

that: 1) the court lacks personal jurisdiction because none of the Federal Defendants has been

properly served; 2) the court lacks subject matter jurisdiction over the NPS because Plaintiffs

have failed to state a cause of action under the Administrative Procedures Act (5 U.S.C. § 701, *et

seq.*); and 3) the individual Federal Defendants are entitled to qualified immunity from a *Bivens*

action.[3]  Defendants IVCC and William Moore are not parties to the Motion presently before this

Court.

For the reasons set forth herein, Federal Defendants' Motion will be granted in part and

denied in part.

---

[2]  Unless otherwise noted, Defendants NPS, Reidenbach, MacLeod and Sidles shall
hereinafter be collectively referred to as "Federal Defendants."

[3]  Inasmuch as Plaintiffs withdrew their Motion for Preliminary Injunction (Doc. No. 30),
their request for same against Federal Defendants (Count VIII of Amended Complaint) is
rendered moot.

## II.    Standards of Review & Jurisdiction

Federal Defendants base the instant Motion on several pleading deficiencies in Plaintiffs' Amended Complaint, including a general failure to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," pursuant to Rule 8(a) of the Federal Rules of Civil Procedure.  To that end, said Defendants seek dismissal of Plaintiffs' claims under Subsection (b)(6) of  Rule 12 for failure to state a claim upon which relief can be granted. Additionally, they seek dismissal pursuant to Subsection (b)(1) of Rule 12, for lack of subject-matter jurisdiction; Subsection (b)(2) for lack of personal jurisdiction; and, Subsection (b)(5) for insufficient service of process.  Fed.R.Civ.P. 12(b).

### A.    Personal Jurisdiction / Insufficient Service of Process

Before this Court may address the merits of any substantive claims raised by the parties, it must determine whether or not it possesses jurisdiction in the first instance.

"In deciding a motion to dismiss for lack of [personal] jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010) (internal citation omitted). Federal Defendants first move to dismiss Plaintiffs' Amended Complaint on the basis that none of them has been properly served.  Subsection (i) of Rule 4 of the Federal Rules of Civil Procedure governs service of process in this matter and provides in pertinent part:

( i)    Serving the United States and Its Agencies, Corporations, Officers, or Employees.

(1)    *United States*. To serve the United States, a party must:

(A)

> ( i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought - - or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk - - or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

( C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

(3) *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).[4]

---

[4] Subsection (e) of Rule 4 provides as follows:

(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

(1)  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)  doing any of the following:
   (A) delivering a copy of the summons and of the complaint to the

Fed.R.Civ.P. 4( i).

"'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint' [and] technical defects 'do not justify dismissal unless a party is able to demonstrate actual prejudice'" however, notice alone is not always enough. *Hechinger Liquidation Trust v. Porter-Cable Corp. (In re Hechinger Inv. Co. of Del., Inc.)*, 308 B.R. 683, 687 (Bankr. D. Del. 2003).

Additionally,

> Although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service. Proper service is still a prerequisite to personal jurisdiction. Inquiry into the propriety of service is separate from, and in addition to, the due process concerns present in an inquiry into the notice itself. A district court's power to assert in personam authority over parties defendant is dependent not only on compliance with due process but also on compliance with the technicalities of Rule 4. Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service.

*Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 492 (3d Cir. 1993).

---

individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
( C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Subsections (f) and (g) of Rule 4 are inapplicable to the case at bar.

Federal Defendants concede that copies of the summons and Amended Complaint have been delivered to the United States Attorney's Office. (Mot. to Dismiss, 8.) Furthermore, the exhibits attached to their Motion indicate service on the United States Attorney General via certified mail (Mot. to Dismiss, Ex. I), on Defendant Reidenbach via personal service to an agent (Mot. to Dismiss, Ex. F), on Defendant MacLeod via personal service to an agent (Mot. to Dismiss, Ex. D), and on Defendant Sidles via personal service (Mot. to Dismiss, Ex. C).[5] Any deficiencies evidenced by said documents are remedied by Plaintiffs' Affidavit of Service and attending exhibits, which were filed of record subsequent to the instant Motion to Dismiss. (Doc. No. 16.)

Based upon the foregoing legal precepts and this Court's review of the documentation cited herein, Federal Defendants' request for relief pursuant to Subsections (2) and (5) of Rule 12 must be denied.[6]

### B.    Subject Matter Jurisdiction

Federal Defendants next assert that pursuant to Federal Rule of Civil Procedure 12(b)(1), subject matter jurisdiction in this case is lacking . . .

> Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal court to hear a claim or case. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). In the face of a 12(b)(1) motion, the plaintiff has the burden to

---

[5]  Plaintiffs maintain that "[S]ervice was accepted by persons representing they were authorized to accept service on behalf of the individual Defendants *.*.*.*." (Resp. Mot. Dismiss, 11.)

[6]  This Court notes that in their Reply regarding the instant Motion to Dismiss, Federal Defendants do not contest Plaintiffs' subsequent representations regarding the sufficiency of service of process. (Doc. No. 21.)

"convince the court it has jurisdiction." *Gould Elecs., Inc. v. United States*, 220
F.3d 169, 178 (3d Cir. 2000); *see also Kehr Packages v. Fidelcor, Inc.*, 926 F.2d
1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under
Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

*Stewart v. XRimz*, LLC, 2011 U.S. Dist. LEXIS 27988, at *7 (M.D. Pa. Mar. 18, 2011).

Moreover,

A court must dismiss a complaint if it lacks subject matter jurisdiction over the
claims because without subject matter jurisdiction the court does not have the
power to hear the case. Fed. R. Civ. P. 12(b)(1); *Mortensen v. First Fed. Sav. and
Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Because subject matter jurisdiction
is central to a court's authority, a court can raise issues of subject matter
jurisdiction *sua sponte* at any time. Fed. R. Civ. P. 12(h)(3).

Challenges to subject matter jurisdiction may be facial or factual. *Mortensen*, 549
F.2d at 891. The former proceeds like a motion under Rule 12(b)(6), where a court
accepts the allegations in the complaint as true. *Id.* In the latter, a court is "free to
weigh the evidence and satisfy itself as to the existence of its power to hear the
case." *Id.*

*I.K. v. Sch. Dist. of Haverford Twp.*, 2011 U.S. Dist. LEXIS 28866, at **10-11 (E.D. Pa. Mar.

21, 2011).

Therefore,

In reviewing a facial attack, which addresses a deficiency in the pleadings, we
must only consider the allegations on the face of the complaint, taken as true, and
any documents referenced in the complaint, viewed in the light most favorable to
the plaintiff. "The plaintiff must assert facts that affirmatively and plausibly
suggest that the pleader has the right he claims (here, the right to jurisdiction),
rather than facts that are merely consistent with such a right."

*Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir.

2008)(citations omitted).

Inasmuch as Federal Defendants are claiming that "this Court lacks jurisdiction to hear

the APA claim ***because plaintiffs have failed to plead*** a discrete act that the NPS is required to

perform, and are unable to do so because the management of the Independence Visitors' Center is committed to the agency's discretion by applicable statute and Public Law 106-131," the within matter involves a facial challenge to subject matter jurisdiction. (Mot. to Dismiss, 15)(emphasis added).[7]

Plaintiffs assert federal question subject matter jurisdiction under 28 U.S.C. § 1331,[8] based on the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq.

The APA provides in part:

> (a)  This chapter applies, according to the provisions thereof, ***except to the extent that***--
>
> (1) statutes preclude judicial review; or
>
> (2) ***agency action is committed to agency discretion by law***.

5 U.S.C. § 701(a) (emphasis added).

In commencing its analysis of Plaintiffs' claims brought pursuant to the APA, this Court must be mindful that:

> The APA does not allow the court to overturn an agency decision because it disagrees with the decision or with the agency's conclusions about environmental impacts. An agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The standard is deferential. The court "may not substitute its judgment for that of the agency concerning the wisdom or prudence of [the agency's] action."
>
> In conducting an APA review, the court must determine whether the agency's

---

[7]  In their Response to Federal Defendants' Motion, Plaintiffs address the subject matter jurisdiction issue by concluding that said Defendants' argument "presumes jurisdiction" and therefore state that "Plaintiffs thus understand jurisdiction to be uncontested." (Resp. Mot. Dismiss, 5.) Clearly, such is not the case.

[8]  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

> decision is "founded on a rational connection between the facts found and the choices made . . . and whether [the agency] has committed a clear error of judgment." "The [agency's] action . . . need only be a reasonable, not the best or most reasonable, decision."

*River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010)(citations omitted).

When assessing a claim made pursuant to the APA, "Agency inaction is actionable under the APA where the 'plaintiff asserts that an agency failed to take a discrete agency action that it was required to take.'" *Sydnor v. OPM*, 336 F. App'x 175, 181 (3d Cir. 2009)(quoting *Norton v. S. Wilderness Alliance*, 542 U.S. 55, 64 (2004)). In that same vein,

> We must also ask ***whether the action at issue here was discretionary*** *.*.*.*.*. This distinction is central to the question of subject-matter jurisdiction, and is easy to elide. Indeed, such distinctions are crucial to administrative law generally; the framework of judicial review of agency action that has evolved over the past half-century is grounded in a sharp distinction between decisions committed to agency discretion, and decisions, whether "ministerial" or "purely legal," governed directly by the applicable statute or regulation. Whatever the label, our caselaw distinguishes between actions which an agency official may freely decide to take or not to take, and those which he is obligated by law to take or not to take.

*Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir. 2005)(emphasis added).

Therefore, "[t]o support APA jurisdiction, the agency action must be final, it must adversely affect the party seeking review, ***and it must be nondiscretionary***." *Id.* at 200 (emphasis added).

Moreover,

> ***[T]he APA is not an independent basis for jurisdiction***; its application in this case, then, requires federal question jurisdiction to exist under 28 U.S.C. § 1331, the federal question statute. *See Califano v. Sanders*, 430 U.S. 99, 107, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977) ("We thus conclude that the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."). Assuming a federal question exists, the APA entitles "a person suffering legal wrong because of agency action . . . to judicial review thereof," ***provided that the agency action complained of is non-discretionary***.

*Paye v. Napolitano*, 2010 U.S. Dist. LEXIS 130432, at *11 (M.D. Pa. Dec. 9, 2010)(emphasis

added). Accordingly, "[i]f the wrongful actions were discretionary, the Court has no jurisdiction

over the claims under the APA." *Id.* at **12-13. *See also Asemani v. IRS*, 163 F. App'x 102,

104 (3d Cir. Pa. 2006)(District Court did not possess jurisdiction over a plaintiff's claim against

Internal Revenue Service because APA was not an independent source of jurisdiction and did not

apply to the IRS's discretionary action).

Federal Defendants herein claim the conduct in question is committed to agency

discretion by law and the court therefore lacks subject matter jurisdiction. This Court agrees.

In addressing this issue, the parties' briefs cover a number of sources of law. First, both

sides first look to the "Gateway Visitor Center Authorization Act of 1999" ("Authorization

Act"), which establishes the authority of the NPS to manage the INHP through cooperation with

the IVCC. *See* 106 P.L. 131.

The Authorization Act provides in relevant part:

> SEC. 2. FINDINGS AND PURPOSE.
>
>                                        \* \* \* \*
>
> (b) PURPOSE.--The purpose of this Act is to authorize the Secretary of the Interior to enter into a cooperative agreement with the Gateway Visitor Center Corporation to construct and operate a regional visitor center on Independence Mall.
>
> SEC. 3. GATEWAY VISITOR CENTER AUTHORIZATION.
>
> (a) AGREEMENT.--The Secretary of the Interior, in administering the Independence National Historical Park, ***may*** enter into an agreement under appropriate terms and conditions with the Gateway Visitor Center Corporation… to facilitate the construction and operation of a regional Gateway Visitor Center on Independence Mall.

(b) OPERATIONS OF CENTER.--The Agreement shall authorize the Corporation to operate the Center in cooperation with the Secretary and to provide at the Center information, interpretation, facilities, and services to visitors to Independence National Historical Park…

( c) MANAGEMENT-RELATED ACTIVITIES.--The Agreement shall authorize the Secretary to undertake at the Center activities related to the management of Independence National Historical Park, including, but not limited to, provision of appropriate visitor information and interpretive facilities and programs related to Independence National Historical Park.

(d) ACTIVITIES OF CORPORATION.--The Agreement shall authorize the Corporation, acting as a private nonprofit organization, to engage in activities appropriate for operation of a regional visitor center that may include, but are not limited to, charging fees, conducting events, and selling merchandise, tickets, and food to visitors to the Center.

*Id.* (emphasis added).

Therefore, by its explicit terms, the Secretary of the Interior <u>may</u> enter into an agreement; however, no agreement is compelled. As such, the Authorization Act clearly leaves the NPS with the absolute discretion to enter into agreements with the Gateway Visitor Center Corporation (now known as IVCC). In this case, Federal Defendants *never entered into a formal agreement* but instead, utilized Special Use Permits ("SUPs"). Assuming *arguendo* that these SUPs constituted an "agreement" for purposes of the Authorization Act, they would be in compliance with same, as the SUPs specifically reference the Authorization Act and cite to 106 P.L. 131 for purposes of establishing the authority of the Secretary and delineating the terms by which IVCC would be permitted to operate their facility.

Plaintiffs specifically acknowledge that "no such agreement [under the Authorization Act] has ever existed" between NPS and IVCC. (Resp. Mot. Dismiss, 2.) Accordingly, the "shall" provisions contained within Subsections (b), ( c) and (d) would not be applicable to any

other arrangement entered into between the parties.[9]

With further regard to NPS management provisions, the parties also look to various sections contained within Chapter 79 of Title 16 (National Park Service Organic Act),[10] including the National Park Service Concessions Management and Improvement Act ( 16 U.S.C.S. § 5951, et seq.).   Relevant sections define the authority of the NPS in relation to private individuals, corporations and other entities . . .

- Section 5952 imposes a requirement that concession contracts be awarded through a competitive selection process and outlines in detail the process for soliciting and evaluating concession proposals.  However, Subsection (10) of same provides "Nothing in this title shall be construed as limiting the authority of the Secretary to determine whether to issue a concessions contract or to establish its terms and conditions in furtherance of the policies expressed in this title."

- Section 5959 provides the ability to contract out concessions management to private entities.  Section 5959( c) expressly reserves final decision-making authority to the Secretary and states, "Nothing in this section shall diminish the governmental responsibilities and authority of the Secretary

---

[9] Plaintiffs argue that "in an attempt to conceal their responsibility," the example of an SUP as provided in Federal Defendants' Motion omitted language regarding IVCC's consultation with, and consent of, the NPS.  (Resp. Mot. Dismiss, 7.)  However, review of the SUP submitted by Plaintiffs in support of this argument clearly demonstrates that the subsequent SUPs were issued for the sole purpose of extending the expiration date of the initial SUP, to allow for finalization of a formal agreement and cannot be construed as an overt attempt to conceal anything.  (Resp. Mot. Dismiss, Ex. A.)

[10] The Organic Act provides in pertinent part that "[t]he [National Park Service] thus established **shall promote and regulate the use of the Federal areas known as national parks**, monuments, and reservations hereinafter specified, except such as are under the jurisdiction of the Secretary of the Army, as provided by law, **by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations**, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.  16 U.S.C.S. § 1 (emphasis added).  The language "by such means and measures" similarly assigns discretion to the NPS.

to administer concessions contracts and activities…".

- Section 5966 allows for the issuance of commercial use authorizations (CUAs) at the discretion of the Secretary, subject to restrictions and limitations. There is no requirement that CUAs be issued at all, although section 5966( c) defines who is and is not eligible for CUAs. The definition includes "such other uses as the Secretary determines appropriate."[11]

The provisions of Title 16 impose significant requirements and limitations on how the NPS contracts with private entities. However, it is equally clear that each of these provisions ultimately reserves discretion to the Secretary. In view of the facts that: (1) Plaintiffs' allegations do not implicate the existence of an agreement that does not satisfy the Gateway Act; (2)

---

[11] Plaintiffs devote three pages of their Response to a discussion regarding Commercial Use Authorizations pursuant to 16 U.S.C. § 5952 and the NPS's allegedly arbitrary, capricious and discriminatory issuance of same. In doing so, Plaintiffs argue that "[C]UAs are plainly limited to operations a [sic] with "minimal impact" on the national parks, and, even then, are only available to those either (1) with 'annual gross receipts of not more than $25,000' or (2) which 'originat[e] and terminat[e] outside' of the unit and involve only 'incidental use' of the park." (Resp. Mot. Dismiss, 21.) However, a reading of the actual language of 16 U.S.C. § 5952( c) clearly provides a third - notably discretionary - provision:

( c) Limitations. Any authorization issued under this section shall be limited to–

(1) commercial operations with annual gross receipts of not more than $ 25,000 resulting from services originating and provided solely within a unit of the National Park System pursuant to such authorization;

(2) the incidental use of resources of the unit by commercial operations which provide services originating and terminating outside of the boundaries of the unit; *or*

(3) such uses by organized children's camps, outdoor clubs and nonprofit institutions (including back country use) *and such other uses as the Secretary determines appropriate.*

16 U.S.C. § 5966( c) (emphasis added).

Plaintiffs' allegations regarding the applicability of the Organic Act, the Management Act and

the Concessions Management and Improvement Act fail to acknowledge the discretion expressly

granted to the NPS by each, thereby negating any claim that the NPS was "required to take" a

discrete action;[12] and, (3) Plaintiffs cannot "affirmatively and plausibly suggest" that they have

the right to jurisdiction, this Court finds that they have not met their jurisdictional burden.

---

[12]  Plaintiffs assert that "The discrete actions NPS was obligated by law to take with
regard to the Independence Visitor Center are clear: the NPS was "to administer, operate,
manage, lease, and maintain" properties at INHP pursuant to 16 U.S.C. § 407s."  (Resp. Mot.
Dismiss, 19.)  However, Plaintiffs omit that language from Section 407s which expressly grants
discretion to the Secretary in such administration, operation, management, leasing and
maintaining:

> Following the acquisition by the Federal Government of properties pursuant to
> this Act and until such time as the buildings thereon are demolished or the
> properties and buildings thereon are devoted to purposes of the Independence
> National Historical Park as provided herein, ***the Secretary is authorized***, with
> respect to the said properties, to administer, operate, manage, lease, and maintain
> such properties, and lease, demolish, or remove buildings, or space in buildings
> thereon, in such manner ***as he shall consider to be in the public interest***. Any
> funds received from leasing the said properties, buildings thereon, or space in
> buildings thereon, shall be deposited to the credit of a special receipt account and
> expended for purposes of operating, maintaining, and managing the said
> properties and demolishing or removing the buildings thereon. ***The Secretary, in
> his discretion and notwithstanding other requirements of law, may exercise and
> carry out the functions authorized herein by entering into agreements or
> contracts with public or private agencies, corporations, or persons, upon such
> terms and conditions as he deems to be appropriate in carrying out the purposes
> of this Act***.

16 U.S.C.S. § 407s (emphasis added).  With respect to their similar argument regarding discrete
actions required in awarding concessions contracts, Plaintiffs omit similarly pertinent language:

> (10)    Secretarial authority. Nothing in this title shall be construed as limiting the
>         authority of the Secretary to determine whether to issue a concessions
>         contract or to establish its terms and conditions in furtherance of the
>         policies expressed in this title.

16 U.S.C. §5952(10).

*Church of the Universal Bhd.,* 296 F. App'x at 288 (citations omitted).[13]   Accordingly,

Plaintiffs' claims against the NPS are dismissed for lack of subject matter jurisdiction.

### C.    Motion to Dismiss for Failure to State a Claim

With regard to the remaining portion of Federal Defendants' motion brought pursuant to

Fed. R. Civ. P. 12(b)(6), courts must "accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of

Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)(internal quotation and citation omitted).  As a result

of  the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555

(2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct.

at 1949 (citing *Twombly*, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.

Specifically,

> Applying the principles of *Iqbal*, the Third Circuit in *Fowler v. UPMC Shadyside*,
> 578 F.3d 203 (3d Cir. 2009), articulated a two-part analysis that district courts in
> this Circuit must conduct in evaluating whether allegations in a complaint survive
> a Motion to Dismiss. First, the factual and legal elements of a claim should be

---

[13]  In relying upon the APA, Plaintiffs cite to 5 U.S.C. §706(2), which delineates the court's scope of review under the APA, in the event the APA is found to be applicable in the first instance. Inasmuch as jurisdiction cannot be deemed vested in this Court by means of the APA because the NPS's action is committed to their discretion by law, application of Section 706(2)(A) is rendered moot.

separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Id.* (citing *Phillips*, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Perano v. Twp. of Tilden*, 2010 U.S. Dist. LEXIS 36781, at **15-17 (E.D. Pa. Apr. 12, 2010).

Moreover, "[i]n considering a motion to dismiss, the issue is not whether the plaintiffs ultimately will prevail but whether they are entitled to offer evidence to support their claims." *Egnotovich v. Greenfield Twp. Sewer Auth.*, 304 F. App'x 94, 97 (3d Cir. 2008).

"In deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts generally consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the complaint." *Brown v. Daniels*, 128 F. App'x 910, 913 (3d Cir. 2005)(quoting *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

To that end, Rule 12(d) of the Federal Rules of Civil Procedure provides:

> If, on a motion under Rule 12(b)(6) or 12( c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d).

A document forms the basis of a claim if it is integral to or is explicitly relied upon in the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The rationale in converting a motion to dismiss to one of summary judgment is to afford the

plaintiff an opportunity to respond to the extraneous evidence submitted by the defendant and considered by the court. *See Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied,* 510 U.S. 1042 (1994). The primary problem of lack of notice to the plaintiff when the defendant attaches documents to their motion to dismiss dissipates when the plaintiff has actual notice of the attachments and the plaintiff has relied on the documents in forming the Complaint. *See Burlington Coat Factory,* 114 F.3d at 1426 (internal citations omitted).

In this case, Federal Defendants rely upon documents which are integral to the claims set forth in the Complaint. Additionally, Plaintiffs have had notice of said documents and address same in their Response to said Defendants' Motion to Dismiss. In fact, Plaintiffs maintain that "[c]onversion of Defendants' Motion is unwarranted *.*.*.*" and in doing so, correctly point out that any and all additional documents referenced for purposes of the instant Motion, are those of which this Court may take judicial notice. (Resp. Mot. Dismiss, 8 n. 13.) Accordingly, this Court will not convert the instant motion into one for summary judgment.

As fully discussed hereinabove, this Court has determined that it lacks subject matter jurisdiction over Plaintiffs' claims against the NPS. However, to the extent Plaintiffs allege violations of procedural and substantive due process rights pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), individual Federal Defendants seek dismissal of Count II of Plaintiffs' Amended Complaint on the basis of qualified immunity from actions performed in their official capacity.[14]

---

[14] *Bivens* held that a petitioner was entitled to recover money damages for injuries suffered as a result of various federal agents' violation of his Constitutional rights. *Bivens,* 403 U.S. at 397. *See also Wadhwa v. Sec'y Dep't of Veterans Affairs,* 396 F. App'x 881 (3d Cir.

### 1.     Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Miller v. Clinton County,* 544 F.3d 542, 547 (3d Cir. 2008)(quoting *Saucier v. Katz,* 533 U.S. 194, 200 (2001)).  The privilege is "[A]n immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (U.S. 1985).  Therefore, the question of whether qualified immunity applies must be resolved at the earliest possible stage in litigation to avoid "'[subjecting] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Id.* (citation omitted).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

In addressing this issue, "[t]wo inquiries govern whether an official is entitled to qualified immunity: (1) whether the facts alleged establish a violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established." *Hopkins v. Vaughn*, 363 F. App'x 931, 935 (3d Cir. 2010).  The two prongs should often be addressed in order, although the court has discretion to address them in the sequence it deems appropriate. *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009).

---

2010)("*Bivens* provides a mechanism for a plaintiff to seek money damages from a federal defendant for violations of the federal Constitution.").

Therefore,

> The focus of qualified immunity is on the "objective legal reasonableness" of the actions taken by the public official. [B]efore a court even addresses a claim of qualified immunity, however, it first should determine whether a plaintiff has alleged "a violation of a constitutional right at all.""Deciding 'this purely legal question permits the courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.'"

> Further, *.*.*.*. for a court to impose liability upon an official, the right allegedly violated "'must have been "clearly established" in a more particularized, and hence more relevant, sense.'" "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Pro v. Donatucci*, 81 F.3d 1283, 1286-1287 (3d Cir. 1996)(citations omitted).

Furthermore,

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009)(citations omitted).

With this standard in mind, this Court must evaluate whether or not Plaintiffs' have stated a *Bivens* claim for which they are entitled to relief.

### a. Violation of a Constitutional Right

Plaintiffs allege violations of procedural due process based on "a denial of fundamental procedural fairness" and substantive due process based on "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." (Resp. Mot. Dismiss, 11-12.) In doing so, Plaintiffs have named three individual Federal Defendants involved with the NPS during the relevant time period: Dennis Reidenbach, Cynthia MacLeod

and Darla Sidles. The crux of Plaintiffs' argument is that each of these defendants, "under color of federal law, directed, supervised, condoned and endorsed arbitrary and capricious conduct toward Plaintiffs, including through deliberately misleading Plaintiffs and third parties about their powers, auspices and responsibilities." (Am. Compl. ¶ 115.) Additionally, Plaintiffs cite specific instances of alleged misconduct with respect to each individual Federal Defendant.

Defendant Reidenbach is the former Superintendent of INHP and the current Northeast Regional Director of the NPS. Plaintiffs allege an ongoing pattern of misconduct, including the following examples:

- August, 2006 – Defendant Reidenbach refused to enter into an agreement with Plaintiffs due to concerns about encumbering the visitor experience but failed to take corrective action with respect to other competitors engaged in substantially the same behavior. (Am. Compl. ¶ 45.)

- January, 2007 – Defendant Reidenbach misrepresented the policy regarding the space within the IVC available for use by competitors to Senator Specter and/or selectively enforced that policy against Plaintiffs. (Am. Compl. ¶¶ 51-55.)

- July, 2007 – Defendant Reidenbach affirmed a ban on Plaintiffs' publication, "The Independent," claiming it was primarily a product advertisement while permitting substantially similar publications within the IVC. (Am. Compl. ¶ 71.)

- June 2009 – Defendant Reidenbach misrepresented to Congressman Brady that Plaintiffs are subject to CUA restrictions based on their gross receipts while similarly situated competitors are not. (Am. Compl. ¶ 109.)

Defendant MacLeod was the Superintendent of INHP during the relevant time period. Plaintiffs allege Defendant MacLeod refused to issue CUAs to Plaintiffs while issuing them to competitors throughout 2008. (Am. Compl. ¶ 115; Resp. Mot. Dismiss, 15.) Furthermore, Plaintiffs allege Defendant MacLeod refused to address Plaintiffs' concern in February, 2009 that

the IVCC's proposed confidentiality agreement, which was required in order to continue negotiations, placed unreasonable conditions on Plaintiffs. (Am. Compl. ¶¶ 61-64.)

Defendant Sidles is the former Acting Superintendent of INHP and the current Deputy Superintendent of INHP. (Am. Compl. ¶ 12.) Plaintiffs allege Defendant Sidles refused to issue CUAs to Plaintiffs while issuing them to competitors throughout 2007. (Resp. Mot. Dismiss, 15.)

Notably, in bringing their claims, Plaintiffs repeatedly compare themselves to other entities within the IVCC whom Plaintiffs characterize as their "competitors," to demonstrate the existence of arbitrary and capricious treatment by Defendants. However, despite the fact that much of Plaintiffs' Amended Complaint is premised on their assertions that they were not permitted to stage their tour in certain areas, were not permitted to solicit business in certain areas or at certain times, were not permitted to place signage in certain areas, etc . . ., Plaintiffs fail to allege any facts which demonstrate that these "competitors" did not agree to the terms of a lease agreement similar to those offered to Plaintiffs. For this reason, as well as others which follow, said pleading deficiencies necessarily undermine the validity of Plaintiffs' "arbitrary and capricious" argument against individual Federal Defendants.

In making their *Bivens* claim, Plaintiffs allege that they have "constitutional rights to procedural and substantive due process and constitutional rights **with regard to the protected liberty interests of their property in their business, the Constitutional**." (Am. Comp., ¶114)(emphasis added). In their Response to Federal Defendants' Motion, Plaintiffs argue that the individual interests asserted by them are the freedom from "the exercise of power without any reasonable justification" and the freedom from "harassment and interference in obtaining permits and other government authorization," as these two things specifically pertain to Plaintiffs' ability

to run their walking tour business from the IVCC. (Resp. Mot. Dismiss, 13-14.) A review of the *Bivens* claim contained within Count II of Plaintiffs' Amended Complaint reveals the bases for their claim as being the manner in which individual Federal Defendants portrayed themselves regarding their authority, the manner in which they issued Commercial Use Authorizations (CPUs), and the manner in which they allegedly failed to provide any grievance procedures. (Am. Compl. ¶¶115-118.) However, as noted hereinabove in this Court's discussion regarding subject matter jurisdiction over the NPS, Plaintiffs fail to acknowledge the significant discretionary authority vested in Federal Defendants with regard to such matters.

In order for due process protections to apply, Plaintiffs must first allege a deprivation of "an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 (3d Cir. 2006)(internal quotations omitted). Inasmuch as this matter does not involve any claims involving protection of life, this Court need only address the liberty and property components of due process.

With regard to any potential liberty interest implicated herein,

> [T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation; state actions that exclude a person from one particular job are not actionable in due process claims. Thus, it is the liberty interest to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment. Therefore, Plaintiffs must allege an inability to obtain employment within the field, not just a particular job ***or at a specific location or facility***.

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 F. App'x 135 (3d Cir. Pa. 2010)(citation omitted)(emphasis added).[15] *See also Piecknick v. Pennsylvania,* 36 F.3d 1250,

---

[15] "*Bivens* creates a cause of action which is the federal equivalent of the 42 U.S.C. § 1983 action against state actors, and lies where the defendant has violated the plaintiff's rights under color of federal law." *Crooker v. Werlinger*, 391 F. App'x 126, 127 (3d Cir. Pa. 2010). As

1259 (3d Cir. 1994)("'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.'")(citation omitted); *O'Donnell v. Simon,* 362 F. App'x 300, 304 (3d Cir. 2010)(same).

With regard to any potential property interest, the same must "[r]est upon 'a legitimate claim of entitlement' [and] Courts have consistently held that '***no citizen has a "right" . . . to do business with the government***.'" *Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1366 (11th Cir. 1993)(emphasis added), *cert. denied,* 510 U.S. 819 (1993). *See also Forehand v. IRS,* 877 F. Supp. 592 (M.D. Ala. 1995)(same). Moreover, as the court explained in *Culinary Service,* "[p]rocedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit." *Id.* at 141. Similar to Plaintiffs in *Culinary Service,* Plaintiffs herein . . .

> [C]ite no statute, regulation, government policy, or mutually explicit understanding in their complaint that would demonstrate ***an entitlement*** to pursue their business interests. Nor have Plaintiffs cited any source for their entitlement to this Court. Thus, ***Plaintiffs pled only a unilateral expectation of an interest in operating their business, which is not sufficient to plead an entitlement to a property interest under the Fourteenth Amendment.***

*Id.* at 141 (emphasis added). *See also Mun. Revenue Servs., Inc. v. McBlain,* 347 F. App'x 817, 826 (3d Cir. Pa. 2009)("'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'")(quoting *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). In support of their claims, Plaintiffs herein cite to

---

such, the reasoning behind *Culinary Service* remains applicable to the case at bar.

provisions which validate the Secretary's discretion in conducting the business of the INHP as it has, and provide no basis for this Court to infer that they have any legitimate claim to a purported property interest.[16,17]

As previously noted, Plaintiffs allege that "Defendants Reidenbach, MacLeod and Sidles, under color of federal law, directed, supervised, condoned and endorsed arbitrary and capricious conduct toward Plaintiffs . . . " (Am. Compl. ¶115.)  Additionally, Plaintiffs argue that the individual Federal Defendants refused to consider their requests for redress for IVCC's allegedly wrongful conduct, despite the applicability of "statutes, regulations, policies and orders governing the Federal Defendants' conduct."  (Resp. Mot. Dismiss, 14.)

Plaintiffs base their deprivation argument on their own legal conclusion that individual Federal Defendants' conduct was "wrongful" and ignore the fact that the "statutes, regulations,

---

[16]  In the context of Plaintiffs' due process allegations, this Court must assess individual Federal Defendants' conduct as it pertains to the statutory provisions discussed hereinabove.  To that end, this Court cannot - and will not - pass on the constitutionality of any such provisions.

[17]  In their Surreply, Plaintiffs compare their situation to others in which various types of licenses were initially granted but then later denied.  (Surreply, 4-6.)  Clearly, such is not the scenario involved herein, as Plaintiffs never reached a leasing agreement with Federal Defendants, which would have conferred upon them the benefits they claim were denied.  Instead, they only reached an Admission Sales Agreement with IVCC, which solely provided that IVCC would sell tickets for Plaintiffs' tour in exchange for a portion of the ticket price.  (Am. Compl., Ex. A.)  Moreover, said Agreement provided that:

> This agreement contains the entire agreement between the parties, and all negotiations, considerations, representations and understandings between IVCC and the Company are included in this Agreement.  No oral statements or prior or contemporaneous written matter, whether by the parties or otherwise, which is not specifically identified and incorporated into this Agreement, has any force or effect.  This Agreement may not be modified except in writing executed by both parties.

(Am. Compl., Ex. A, ¶ 6(a).)

policies and orders" to which they refer all confer discretion upon the Secretary to proceed as it has. In doing so, Plaintiffs have failed to state a claim upon which relief can be granted. *See Fowler v. UPMC Shadyside*, 578 F.3d at 211 (court may disregard any legal conclusions set forth in a Complaint).[18]

Reasons such as personal dissatisfaction with the terms of a Confidentiality provision in a proposed lease agreement which prevented finalization of a contract between Plaintiffs and Defendants, do not - and cannot - rise to the level necessary for review of Plaintiffs' due process claims. Again, in attempting to demonstrate that they were treated differently from other tour

---

[18] In further support of their argument on the basis of alleged harassment and interference, Plaintiffs rely on three cases in particular: *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159 (3d Cir. 2006) , *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995), and *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238 (E.D. Pa. 2007). All of these cases involved alleged interferences with each property owner's right to use their property a certain way. However, as the New Jersey District Court has properly recognized,

> *County Concrete* is distinguishable from this case. In *County Concrete*, appellants alleged that the only motivation for enacting an ordinance was to rezone the appellants' property which is an improper use of the zoning authority. ***Here, plaintiffs have not alleged that the zoning board does not have the authority to deny a variance***.
>
> * . * . * . *
>
> In addition, *County Concrete* relied on *Blanche Road* in determining that appellants made out a substantive due process claim. *Blanche Road* applied a lower standard than the currently applied "shocks the conscience" test and subsequently was abrogated on that ground.

*Wessie Corp. v. Sea Isle City Zoning Bd. of Adjustment*, 2007 U.S. Dist. LEXIS 47342, at **14-15 (D.N.J. June 29, 2007)(emphasis added)(citations omitted).

Inasmuch as Plaintiffs did not own (or lease) the real property upon which they assert they had a right to conduct their business, and because discretion was specifically conferred upon Federal Defendants via statute to administer, operate, manage, lease, and maintain the property as they saw fit, the instant case is distinguishable from *County Concrete*, *Blanche* and *Cornell*, and the same rights cannot apply.

groups, Plaintiffs do not allege that their "competitors" did not consent to any terms of IVCC's lease agreement that were fundamentally similar to those with which Plaintiffs take issue. Additionally, Plaintiffs do not allege that said "competitors" were not paying lease fees for the ability to promote, stage, and otherwise conduct their business at the IVCC.[19]  Yet the IVCC still permitted Plaintiffs to conduct their business, albeit (and justifiably) to a more limited extent. Just as their "competitors,"  Plaintiffs were offered opportunities to lease space at the IVCC. Moreover, Plaintiffs' Amended Complaint is devoid of any allegation that the agreements signed by their "competitors" were any less restricting or overly burdensome than the agreement offered to Plaintiffs.  Again, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls.*, 408 U.S. at 577.  Plaintiffs' Amended Complaint summarily concludes that a legitimate claim of entitlement exists, without providing facts that could potentially establish same.

Assuming *arguendo* that Plaintiffs could establish any property or liberty interest from the facts alleged in their Amended Complaint, they would similarly have to demonstrate that they could potentially prove that individual Federal Defendants' actions "shock the conscience." *Levin v. Upper Makefield Twp.*, 90 F. App'x 653, 660 (3d Cir. 2004), *cert. denied,* 543 U.S. 1035 (2004).

---

[19]  This Court is not referring to the standard Admission Sales Agreement existing between the various tour groups and Defendants.  Instead, it is referring to a separate agreement which permits a tour to run their business using an agreed-upon area of the IVCC facility and/or grounds.

This standard has been explained as follows:

> The "core of the concept" of due process is "protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Consequently, "the cognizable level of executive abuse of power [is] that which shocks the conscience." "In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience . . . Only if the necessary condition of egregious behavior were satisfied would there be a possibility of recognizing a substantive due process right to be free of such executive action." *Id.* at 661.

*See also Kolodziej v. Borough of Elizabeth,* 2008 U.S. Dist. LEXIS 91032 (W.D. Pa. Nov. 10, 2008)( "Alleged violations of substantive due process should be analyzed under a 'shocks the conscience' standard *.*.*.* [under which] 'only the most egregious official conduct' will constitute a violation of substantive due process.")(quoting *United Artists Theatre Circuit v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)).

While Plaintiffs have alleged disparate treatment by the individual Federal Defendants, the Amended Complaint contains only bare allegations that such treatment was the result of bias or otherwise arbitrary conduct. Although detailed factual allegations are not required, the pleadings must contain more than merely "labels and conclusions" or "naked assertions devoid of further factual enhancement," which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

The specific facts contained within Plaintiffs' Amended Complaint regarding individual Federal Defendants, without more, are equally consistent with said Defendants merely granting deference to the ultimate purposes and goals of the NPS, as opposed to being the result of arbitrary and/or capricious actions which would "shock the conscience." *See Ferrone v. Onorato,* 298 F. App'x 138, 140 (3d Cir. 2008)("'A benefit is not a protected entitlement if government

officials may grant or deny it in their discretion.'")(quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005)).  Said pleadings do not show that Plaintiffs have any entitlement to relief.

Accordingly, this Court need not continue to the second prong of the qualified immunity analysis and Plaintiffs' *Bivens* claim fails.[20]

---

[20]  Even if Plaintiffs could demonstrate the existence of some constitutional right to conduct their walking tours on federal grounds by means acceptable to them, their Amended Complaint fails to sufficiently plead that any such right was "clearly established" and that the individual defendants knew their conduct was unlawful.

The Gateway Act explicitly authorizes the Secretary to delegate any management activities within his discretion to the IVCC, specifically regarding the provision of information and services at INHP.  Accepting Plaintiffs' contention that no formal agreement exists and that Defendants are instead authorized to act only pursuant to The Organic Act and the Management Act, the level of discretion is similarly broad.  While Plaintiffs attempt to characterize the obligations of the NPS as "unambiguous," the statute in fact provides considerable leeway. Under Title 16 U.S.C. § 5952(1), a competitive selection process must be used "[e]xcept as otherwise provided."

Furthermore, § 5952(10) states:

> Nothing in this subchapter shall be construed as limiting the authority of the Secretary to determine whether to issue a concessions contract or to establish its terms and conditions in furtherance of the policies expressed in this subchapter.

Under either the Gateway Act or the Organic and Management Acts, any of  individual Federal Defendants named herein could reasonably conclude that the manner in which they dealt with Plaintiffs was permissible and was not violative of any clear constitutional right.  Said Defendants would therefore be entitled to qualified immunity on this basis.

## IV.    Conclusion

For the reasons set forth hereinabove, Federal Defendants' Motion to Dismiss on the basis of lack of personal jurisdiction will be denied, as said Defendants have been properly served.  Federal Defendants' Motion to Dismiss Count I will be granted, as this Court lacks subject matter jurisdiction.  Federal Defendants' Motion to Dismiss Count II will be granted because the individual defendants are entitled to qualified immunity.  Federal Defendants' Motion to Dismiss Count VIII is rendered moot by Plaintiffs' withdrawal of their request for preliminary injunctive relief (Doc. No. 30).

In view of the foregoing, the only remaining claims are those against IVCC for Breach of Contract (Count III), Breach of Implied Agreement to Negotiate in Good Faith (Count IV) and Unjust Enrichment (Count VI), as well as claims against both IVCC and William Moore for Tortious Interference with Existing and Prospective Contractual Relations (Count VI) and Commercial Disparagement (Count VII).  Inasmuch as this Court declines to exercise supplemental jurisdiction over these remaining state law claims, the same are dismissed without prejudice to bring them in the Philadelphia Court of Common Pleas.

An appropriate Order follows.

BY THE COURT:


 /s/ C. Darnell Jones, II
C. Darnell Jones,  II        J.